## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

KERRY BEGAY,

     Plaintiff,

    v.                                          Civ. No. 22-70 JB/GJF

DELBERT THOMAS, Detention Officer;
JOSHUA SHOULTS, Detention Officer;
GARY COLEMAN, Detention Officer; and
GERARDO SILVA, Detention Officer,

     Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on the *Martinez* Report filed on November 3, 2024, by Defendants Gary Coleman, Joshua Shoults, Gerardo Silva, and Delbert Thomas [ECF 32], Defendants' Motion for Summary Judgment and Memorandum in Support [ECF 33], Plaintiff's Response[2] [ECF 36], Defendants' Reply [ECF 37], and Defendants' Response to Motion to Amend Complaint [ECF 39].

For the reasons that follow, the Court **RECOMMENDS** that any attempt by Plaintiff to amend his complaint through his June 17, 2024 filing of an "Amended Complaint" be **DENIED AS FUTILE**, that Defendants' Motion for Summary Judgment be **GRANTED,** and that this case be **DISMISSED WITH PREJUDICE**.

---

[1] The undersigned files this Proposed Findings and Recommended Disposition pursuant to the presiding judge's Order Referring Case, which was entered March 1, 2022. ECF 6.

[2] On June 17, 2024, Plaintiff filed a document entitled "Amended Complaint." *See* ECF 36. Because this filing is directed at Defendants' Motion for Summary Judgment, the Court construes it as a response to that motion, albeit grossly untimely. *See id.* As discussed below, any attempt by Plaintiff to amend his complaint through this filing should be denied as futile.

I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Kerry Begay, Jr., a state prisoner proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against various detention officers at San Juan County Adult Detention Center ("SJCADC"), where he was incarcerated at all relevant times. *See* ECF 32, Exs. A–C. Plaintiff filed his initial Complaint on January 31, 2022, and thereafter amended it five times. *See* ECFs 1–2, 8, 11, 15, 18. In a June 28, 2023 Memorandum Opinion and Order, the Court considered the now-operative Fifth Amended Complaint and dismissed with prejudice Plaintiff's claims against SJCADC, reasoning that as "'a detention facility is not a person or legally created entity capable of being sued' under 42 U.S.C. § 1983." ECF 20 at 3 (quoting *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001)) (further citations omitted). In contrast, the Court determined that Plaintiff made sufficient allegations against Officers Thomas, Shoults, Coleman, and Silva to survive initial review under 28 U.S.C. § 1915(e)(2). *See id*. at 4. The claims that remain arise from Plaintiff's interactions with SJCADC detention officers on August 11, 2021, and December 15, 2021. *See* ECF 18.

The Court has construed the Fifth Amended Complaint to allege that Officer "Thomas improperly concealed or explained away the [August 11, 2021] incident, because the detainees in [Plaintiff's] cell block were 'the Natives.'" ECF 20 at 4 (citing ECF 18 at 3). As to Defendants Shoults, Coleman, and Silva, Plaintiff alleges:

> On or about the 15th day of December 2021 . . . Officer Gary Coleman had [P]laintiff Mr. Begay in a headlock/chokehold. [Mr. Begay experienced] compression of the neck, as officer Gerardo Silva restrained Mr. Begay['s] hands behind the back, while officer Joshua Shoults started application of force by striking Mr. Begay with a closed fist to the left mid stomach, & left ribs sec[t]ion, while standing. Mr. Begay fell to the ground from the assault, while on the ground officer Joshua Shoults continued the assault to the left ribs with a closed fist as officer Gerardo Silva restrained Mr. Begay to the ground, while the assault from Officer Shoults continued. Officer Gary Coleman returned to the situation and started spraying Mr. Begay with pepper-gel.

*Id.* (quoting ECF 18 at 3–4). Thus, broadly construing his allegations, Plaintiff appears to assert constitutional claims based on (1) alleged racial discrimination by Officer Thomas on August 11, 2021; and (2) alleged excessive force by Officer Shoults, Coleman, and Silva on December 15, 2021.

Plaintiff does not clearly articulate which constitutional provisions he invokes with respect to each claim. *See* ECF 18. At most, the operative complaint references the Fifth and Eighth Amendments without elaborating on how these provisions were violated. *See id.* at 2. But notably, the Fifth Amendment acts as a limit only on *federal* governmental action, and Defendants are not federal actors. *See Pub. Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952). An Eighth Amendment claim is likewise unavailable to Plaintiff, as the undisputed material facts suggest that he was a pretrial detainee, not a convicted prisoner. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). In other words, Plaintiff fails to state a claim on which relief can be granted under either the Fifth or Eighth Amendment. His failure to identify the applicable constitutional provisions notwithstanding, the Court construes his *pro se* claims liberally to assert any constitutional violations that his factual allegations are fairly thought to support. *See Haines v. Kerner*, 404 U.S. 519, 519–20 (1972).

In a June 17, 2024 filing entitled "Amended Complaint," Plaintiff again relies upon the Fifth and Eighth Amendments, just as he did in his Fifth Amended Complaint, but he also references the Fourteenth Amendment in connection with both his allegations of racial discrimination and excessive force. ECF 36 at 1–3, 5. Defendants and the Court agree that the Fourteenth Amendment is the controlling constitutional provision that applies to Plaintiff's claims,

even if not expressly invoked in earlier iterations of his complaint.[3] Thus, the Court construes his claims, though inartfully pled, to include equal protection and excessive force claims under the Fourteenth Amendment.

The Court directed Defendants to submit a *Martinez* Report addressing Plaintiff's claims and notified the parties that the report could be used in deciding whether to grant summary judgment—either by motion or *sua sponte*—and that the parties should submit whatever materials they considered relevant to Plaintiff's claims and Defendants' defenses. *See* ECF 24 (citing *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978); *Hall v. Bellmon*, 935 F.2d 1106, 1109–12 (10th Cir. 1991); *Celotex Corp. v. Catrett*, 477 US. 317, 326 (1986)). On November 3, 2023, Defendants filed their *Martinez* Report together with a corresponding Motion for Summary Judgment. ECFs 32; 33. Plaintiff did not respond to either filing for more than seven months. *But see* ECF 24 at 5 ("Plaintiff shall file and serve his response . . . within thirty (30) days."). As noted above, Plaintiff's belated "response" was couched as an "Amended Complaint." *See* ECF 36.

To the extent Plaintiff seeks to amend his complaint for a seventh time through his June 17, 2024 filing, Defendants insist that such an attempt is both untimely and futile. The Court agrees. Plaintiff's "Amended Complaint" comes after Defendants have already submitted a *Martinez* Report and summary judgment motion corresponding to Plaintiff's Fifth Amended Complaint. Moreover, Plaintiff does not articulate additional facts to support new claims against

---

[3] "For those in pretrial confinement, such as Plaintiff, claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment." *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). Rather, "'[t]he Fourth Amendment . . . pertains to events leading up to and including an arrest of a citizen previously at liberty,' while the Eighth Amendment is the source of protection for 'prisoners already convicted of a crime who claim that their *punishments* involve excessive force.'" *Id.* (quoting *Porro v. Barnes*, 624 F.3d 1322, 1325–26 (10th Cir. 2010)). Because Plaintiff, as a pretrial detainee, finds himself "somewhere between the two stools of an initial seizure and post-conviction punishment," the Court assesses his constitutional claims under the Fourteenth Amendment. *See id.*; *see also Wise v. Caffey*, 72 F.4th 1199, 1206 (10th Cir. 2023).

Defendants but instead repeats allegations that he was subjected to a racial slur and the victim of excessive force, both claims present in his Fifth Amended Complaint. *Compare* ECF 18, *with* ECF 36. The Court acknowledges that Plaintiff's "Amended Complaint" appears to seek one new form of relief: "injunctive relief . . . do [sic] to the ass[a]ult . . . [that] is traceable to poor hiring practices, inadequate training or insufficient supervision at [SJCADC]." *See* ECF 36 at 7. Defendants maintain, however, and the Court agrees, that any such claim is mooted by Plaintiff's transfer away from SJCADC.[4] *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). Accordingly, any attempt by Plaintiff to assert an injunctive relief claim is futile. For all these reasons, the undersigned recommends that the Court deny Plaintiff leave to amend his complaint for a seventh time.

Conversely, to the extent Plaintiff's June 17, 2024 filing is a belated response to Defendants' summary judgment motion, the Court will consider it. Although a party's failure to timely respond in opposition to a motion generally constitutes consent to grant the motion, *see* D.N.M.LR-7.1(b), such a failure is not by itself a sufficient basis on which to enter judgment against a party. *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

## II.    LEGAL STANDARDS

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing [substantive] law," and a dispute is genuine when "the

---

[4] According to the New Mexico Corrections Department's offender search tool, Plaintiff is currently housed at Southern New Mexico Correctional Facility. *See* https://www.cd.nm.gov/offender-search (last visited July 10, 2024).

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* D.N.M. LR-Civ. 56.1(b) ("[M]aterial facts set forth in the [summary judgment motion] will be deemed undisputed unless specifically controverted."). The movant must first demonstrate "the absence of a genuine issue of material fact and entitlement to judgment as a matter of law" prima facie. *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quotations omitted). The nonmovant must do so "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein"—all of which must take the form of admissible evidence.  *Id.* at 1309; *accord* Fed. R. Civ. P. 56(c).

"A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (Sotomayor, J., dissenting from denial of cert.) (quoting *Anderson*, 477 U.S. at 249). In evaluating such a motion, the Court's discretion is limited in two respects. First, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . . motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Second, the Court can only consider admissible evidence. *Standish v. Jackson Hole Mt. Resort Corp.*, 997 F.3d 1095, 1107 (10th Cir. 2021) (emphasis removed). Although a *pro se* plaintiff's filings are liberally construed, a *pro se* nonmovant must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

A *Martinez* Report is treated as an affidavit and can be used in determining whether to grant summary judgment if it is "supported by affidavits or other materials provided under oath." *Id.* at 1110–11 (citations omitted). A court cannot resolve materially disputed factual issues by accepting a *Martinez* Report's findings when the plaintiff has presented conflicting evidence. *Id.* at 1111.

### B.  Qualified Immunity

The defense of qualified immunity shields officials from civil liability as long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity also shields officials who have "reasonable, but mistaken beliefs" and operates to protect officials from the law's sometimes "hazy border[s]." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). In sum, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *D.C. v. Wesby,* 583 U.S. 48, 63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Because of the burdens of litigation, issues of qualified immunity are best resolved at the "earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010). "Once a defendant raises qualified immunity, the plaintiff bears the burden to show that the defendant is not entitled to immunity." *Lincoln*, 880 F.3d at 537 (citing *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005)). To overcome the defense of qualified immunity, a plaintiff must show that the defendant violated a constitutional or statutory right and that the violated right was clearly established at the time of the alleged unlawful activity. *Id.* (internal quotations omitted) (citing

*Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016)). For the law to be clearly established:

> [t]he contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. And the contours of a particular right are generally only sufficiently clear to put a reasonable official on notice if a plaintiff (1) identif[ies] an on-point Supreme Court or published Tenth Circuit decision, or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.

*Perry v. Durborow*, 892 F.3d 1116, 1122–23 (10th Cir. 2018) (quotations and citations omitted).

"A right is 'clearly established' when every "'reasonable official would [understand] that what he is doing violates that right.'" *Lincoln*, 880 F.3d at 537 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, a court may conclude that a right was clearly established only if it "was sufficiently clear that a reasonable government officer *in the defendant's* shoes would understand that what he or she did violated that right." *Casey v. W. Las Vegas Independent Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (emphasis added). But courts cannot define the relevant constitutional right "at a high level of generality[;]" rather, the analysis must determine whether the "clearly established law . . . [is] particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotations omitted). Although, this inquiry "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Mullenix*, 577 U.S. at 11) (internal quotations omitted). "[T]he key is whether the *specific conduct* has been clearly established as a constitutional violation." *Lincoln*, 880 F.3d at 537 (quoting *Mullenix*, 577 U.S. at 11) (emphasis added).

## III.   UNDISPUTED MATERIAL FACTS

As a preliminary matter, the Court notes that facts that follow are derived from Defendants' *Martinez* Report [ECF 32] and Defendants' Motion for Summary Judgment [ECF 33] and are not

"specifically controverted" with competent evidence by Plaintiff in his unsworn Response to Defendants' summary judgment motion or otherwise.[5] *See* D.N.M. LR-Civ. 56.1. Plaintiff's Response fails to comply with Local Rule 56.1, which requires "a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." D.N.M. LR-Civ. 56.1(b). Local Rule 56.1 further specifies that "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id*. And Rule 56.1 is clear that material facts are deemed undisputed unless specifically controverted. *Id*. In his response, Plaintiff broadly purports to "dispute" Defendants' proffered facts and argues that he "can show there is a genuine issue of material fact requiring a tr[ia]l." ECF 36. Yet, he does not point to evidence in the record to support his claims. See ECF 36. Instead, he offers conclusory assertions and commentary related to Defendants' proffered facts, which can hardly be said to satisfy Federal Rule of Civil Procedure 56 or Local Rule 56.1. Accordingly, none of Defendants' undisputed material facts have been specifically controverted as contemplated by Rule 56.1.

In June 2021, Plaintiff was charged with a probation violation and booked into SJCADC, where he was housed at all times relevant to this case. ECF 33 at Undisputed Material Fact ("UMF") 1 (citing ECF 32, Exs. A & C). An Order Revoking Probation and Commitment to the

---

[5] For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citation omitted). Here, neither Plaintiff's initial Complaint nor his Fifth Amended Complaint were sworn under penalty of perjury and, thus, neither are treated as affidavits. *See* ECFs 1, 18.

Department of Corrections was not entered against Plaintiff until February 21, 2022.[6] ECF 32, Ex. B.

### A.  August 11, 2021 Incident

On August 11, 2021, Plaintiff and two fellow detainees in Pod B of SJCADC physically attacked Officer Thomas, punching and kicking him repeatedly, until the officer was extricated from the pod by fellow detention officers. ECF 33, at UMF 3; ECF 32, Exs. D & I. Officer Thomas sustained injuries during the attack, was in and out of consciousness during its immediate aftermath, and was transported to the hospital for treatment. ECF 33, at UMF 4; ECF 32, Ex. I ¶ 7. Sergeant Valeri Reynoso followed Officer Thomas to the medical procedure area of SJCADC after the attack and prepared an incident report based on the account Officer Thomas provided. ECF 32, Ex. E, at 5. According to Sergeant Reynoso, Officer Thomas identified his attackers as "the natives," who were on the "upper right side of the pod," and who were yelling at him to "get the [expletive] out of the pod." *Id*. For his part, Officer Thomas does not independently recall referring to his attackers as "the natives," and he insists that if he used that term when speaking with his Sergeant, it was merely to convey to her the identity of those involved in his attack.[7] ECF 33, at UMF 5; ECF 32, Ex. I ¶ 9. Each of the detainees involved in the attack is Native American, as is Officer Thomas. ECF 33, at UMF 6; ECF 32, Ex. I ¶ 9.

---

[6] Based on this timeline, Defendants observe that Plaintiff was a pretrial detainee from the time he was booked in the SJCADC in June 2021, until the February 21, 2022 Order that revoked his probation and committed him to the New Mexico Corrections Department. ECF 39 at 4. Plaintiff does not dispute this allegation.

[7] Plaintiff attempts to cast doubt on the believability of Officer Thomas's statement to this effect: "First [D]efendant Thomas states he [doesn't] recall saying anything [like]'the Native' but then states 'he said it but not to Plaintiff, to Sergeant Valerie Reynoso." ECF 36 at 2. The Court finds no inconsistency in Officer Thomas's statement concerning his use of the word "natives" and, more importantly, Plaintiff has pointed to no evidence that would specifically controvert Officer Thomas's attestation.

Deputy Avery Washburn of the San Juan County Sheriff's Office ("SJCSO") investigated the battery of Officer Thomas, including viewing the video of the incident and interviewing Officer Thomas. ECF 33, at UMF 7; ECF 32, Exs. F, G, H, J. Following his investigation, Deputy Washburn submitted an Affidavit for Arrest Warrant, and Plaintiff was charged with Aggravated Battery Upon a Peace Officer (Great Bodily Harm). ECF 33, at UMF 7; ECF 32, Exs. F, G, H, J. Officer Thomas was not involved in the charging decision. ECF 32, Ex. H ¶ 8. Sometime after San Juan County Magistrate Court made a probable cause finding with respect to the criminal charges against Plaintiff, the charges against Plaintiff were dismissed by the State. ECF 32, Ex. J.

Plaintiff was also independently disciplined by SJCADC for his participation in the August 11, 2021 attack of Officer Thomas. ECF 33, at UMF 8. Due to concerns for officer safety and in accordance with SJCDC procedures, Plaintiff was placed in restrictive housing and in full restraints for 27 days. ECF 33, at UMF 8; ECF 32, Exs. K, L & W.

**B. December 15, 2021 Incident**

Four months later, in a separate incident at SJCADC, Plaintiff initiated a physical altercation by twice punching Officer Nicholas Shoults in the face with a closed fist. ECF 33, at UMF 9; ECF 32, Ex. O & Q. Officers Shoults, Coleman, and Silva responded by attempting to restrain Plaintiff, including by taking him to the ground. ECF 33 at UMF 10; ECF 32, Exs. O, P, R, S. Plaintiff resisted, even after he was on the ground, and Officer Shoults struck Plaintiff in his side. ECF 32, Exs. Q & O. Only after Officer Coleman sprayed Plaintiff in the face with pepper gel did Plaintiff cease resisting such that the officers could place him in handcuffs. ECF 33, at UMF 10; ECF 32, Exs. O–S. Approximately three minutes elapsed from Plaintiff striking Officer Shoults's face to officers placing Plaintiff in handcuffs. ECF 33, at UMF 10; ECF 32, Ex. O. During that three-minute period, the officers' use of force against Plaintiff was in accordance with

the SJCADC use of force policy. ECF 33, at UMF 10; ECF 32, Exs. O, T, W. Following the incident, Plaintiff was evaluated and cleared by medical personnel. ECF 33, at UMF 10; ECF 32, Exs. P, Q, R. He was ultimately charged and convicted by a jury of Battery Upon a Peace Officer. ECF 33, at UMF 9; ECF 32, Ex. V.

## IV.   ANALYSIS

Broadly construed, Plaintiff's claims assert liability on the part of Defendants, pursuant to 42 U.S.C. § 1983, for violations of the Fourteenth Amendment. *See* ECF 18. Defendants' arguments in opposition are essentially three-fold: (1) that Plaintiff's claim against Officer Thomas for racial discrimination fails under the equal protection clause of the Fourteenth Amendment, as "[n]o inference of racial discrimination can be drawn"; (2) that based on the totality of circumstances, Defendants Shoultz, Silva, and Coleman's December 15, 2021 use of force against Plaintiff was reasonable and not excessive; and (3) that Defendants are entitled to qualified immunity with respect to each of Plaintiff's claims. *See* ECF 33 at 4–12.

Turning first to qualified immunity, the Court observes that the defense is only available for claims against public officials in their individual capacity. *See Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (citation omitted). Plaintiff purports to sue each defendant in their individual *and official* capacities. *See* ECF 18 at 1–2; *see also* ECF 36 (clarifying that his claims are against Defendants in their "personal as well as their official capacit[ies]."). An official capacity suit is "essentially another way of pleading an action against the county or municipality [the official] represent[s]." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Yet, a county "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, it may be liable only under a theory of municipal liability, which requires the plaintiff to demonstrate: (1) "the existence of a municipal

policy or custom," and (2) "that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citation omitted). Here, the facts alleged in Plaintiff's Fifth Amended Complaint are insufficient to state a plausible official capacity claim against any of the Defendants. *See* ECF 18. That is, Plaintiff fails to allege that Defendants' purported racial discrimination or excessive force was the result of a county policy or custom. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Because Plaintiff has failed to state a claim against any Defendant in his official capacity, the Court recommends dismissal of Plaintiff's official capacity claims. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines . . . the action . . . fails to state a claim upon which relief may be granted[.]").

Thus, the Court is left to consider whether Defendants are entitled to summary judgment as to damages claims against them in their individual capacities. As to these individual capacity claims, for which Defendants have asserted qualified immunity, it is Plaintiff's burden to show that Defendants are not entitled to qualified immunity. *See Lincoln*, 880 F.3d at 537 (citation omitted). To do so, Plaintiff must demonstrate that Defendants violated a constitutional or statutory right and that the right were clearly established at the time of the alleged unlawful activity. *See id.*

### A. Racial Discrimination Claim

Plaintiff alleges that Officer Thomas racially discriminated against him when he "apologiz[ed] for the incident[,] . . . began to explain what occur[r]ed in the pod[,] and kept saying . . . the detainees on the upper right side of the pod 'the natives[]' [r]eferring to [Plaintiff]." ECF 18 at 3. Plaintiff adds that "Officer . . . Thomas continued with a[n] alleged criminal complaint against [Plaintiff]." *Id.* Plaintiff also appears to connect Officer Thomas's alleged racial discrimination to SJCADC's disciplinary sanctions against him for his participation in the August

11, 2021 incident: "In full restraints in salutary [sic] confinement! In San Juan County Adult Detention, is a[n] overreaction by [D]efendants, with discrimination and retaliation!" ECF 36 at 4. As explained above, the Court construes Plaintiff's racial discrimination claim as one asserted under the Fourteenth Amendment equal protection clause. Thus, the question before the Court is whether Plaintiff has asserted a cognizable claim that Officer Thomas's use of the word "natives," together with his criminal prosecution for the August 11, 2021 incident and/or the imposition of disciplinary sanctions against him, amounts to a violation of his equal protection rights.

The equal protection clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This provision is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth*., 933 F.3d 853, 859 (10th Cir. 1991). Courts have identified three varieties of equal protection claims:  (1) those that involve "singling out members of a vulnerable group, racial or otherwise, for unequal treatment"; (2) those that challenge "laws or policies alleged to make irrational distinctions"; and (3) those that involve a circumstances where "the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him." *Garcia v. State of N.M. Office of the Treasurer*, 959 F. Supp. 1426, 1432 (D.N.M. 1997) (citations omitted). For each type, the plaintiff must show "purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Plaintiff's claim does not neatly fit within any of the categories of equal protection claims and, more importantly, fails to plausibly allege that Officer Thomas purposefully discriminated against him. Relatedly, Plaintiff has failed to come forward with any evidence that he was treated different from other detainees because of his race.

14

To begin, Plaintiff does not allege that Officer Thomas directly addressed him or his co-detainees as "the natives." The evidence before the Court suggests that Officer Thomas used the word merely as a way to identify his attackers when he gave his account of the incident to Sergeant Reynoso in the medical procedure area of SJCADC. There is no dispute that the detainees involved in the subject attack were, like Officer Thomas, Native American. To the extent Plaintiff means to suggest that Officer Thomas "continued with a[n] alleged criminal complaint against [Plaintiff]" with a racially-motivated objective, his claim falls apart under examination of the undisputed material facts. After all, neither Officer Thomas nor SJCADC played a role in the decision to prosecute Plaintiff for the August 11, 2021 incident. Moreover, San Juan County Magistrate Court made an independent probable cause finding with respect to the criminal charges against Plaintiff.

Insofar as Plaintiff alleges that his disciplinary sanctions, including his placement in restrictive housing and/or in full restraints, violated his equal protection or other constitutional rights, his claim once again fails. A detention facility, like SJCADC, may impose restrictions on its detainees so long as they are reasonably related to the institution's interest in maintaining jail security. *See Bell*, 441 U.S. at 540 ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting . . . ."). Here, there is no reasonable inference from the undisputed material facts that SJCADC placed Plaintiff in restrictive housing or implemented a restraint protocol for any reason other than the legitimate objective of preventing subsequent attacks on its staff or other inmates.

Apart from a descriptive  but still unfortunate word choice in the aftermath of an attack that left the officer declarant in and out of consciousness, the Court cannot ascribe any objectionable conduct to him. Indeed, given the context in which he uttered the word "natives," the Court is not

convinced that the descriptor can reasonably be characterized as a racially derogatory epithet. But even if it could, Officer Thomas's one-time use of the word "natives" remains insufficient, without more, to make out an equal protection violation.[8] *See Williams v. Bramer,* 180 F.3d 699, 706 (5th Cir. 1999) (holding that "an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation").

Nor has Plaintiff pointed to any evidence that would support an inference that racial considerations contributed to either his criminal prosecution or the disciplinary sanctions levied against him. Apart from his conclusory allegations that he was a victim of racial discrimination or racial profiling, Plaintiff does nothing to connect Officer Thomas's use of the word "natives" to any adverse treatment he endured. Review of the August 11, 2021 video footage confirms that Plaintiff participated in an unprovoked, violent attack on Officer Thomas, and there is no evidence before the Court that Plaintiff was prosecuted or disciplined for any reason other than his participation in that attack.

Ultimately, the Court concludes that Plaintiff has failed to present any evidence from which a reasonable factfinder could determine that Officer Thomas violated his Fourteenth Amendment rights. Nor has Plaintiff cited any on-point case law to suggest that a detention officer's isolated use of the word "natives" to identify the inmates responsible for a recent battery impinges on those inmates' clearly established constitutional rights. And the Court is aware of no such law.

---

[8] If Plaintiff's racial discrimination claim were construed as a due process claim in addition to or in lieu of an equal protection claim, such a claim would fare no better. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (citations omitted) (reasoning that although the use of a "derogatory racial epithet" is "unprofessional and inexcusable," it does not, without more, constitute a violation of the due process clause).

Accordingly, Officer Thomas is entitled to qualified immunity, and the Court recommends that Plaintiff's racial discrimination claim be dismissed with prejudice on that basis.

### B. Excessive Force Claim

"For those in pretrial confinement, . . . claims regarding mistreatment while in custody fall within the ambit of the due process clause[] of the . . . Fourteenth Amendment and [its] protection against arbitrary governmental action." *Wise v. Caffey*, 72 F.4th 1199, 1206 (10th 2023) (quoting *Porro*, 624 F.3d at 1326). To establish a Fourteenth Amendment violation, Plaintiff must point to "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* (quoting *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019)). When evaluating Fourteenth Amendment excessive force claims, courts employ the factors enumerated in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015):

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer[s]; and [6] whether the plaintiff was actively resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 389, 396 (1989)). The Court must assess reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In so doing, it "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials are needed to preserve internal order and discipline and to maintain

institutional security." *Id*. (quoting *Bell*, 441 U.S. at 540, 547). The Court bears these principles in mind in its consideration of the *Kinglsey* factors.

As to the first and sixth factors, the necessity of using physical force against Plaintiff is apparent, as the video evidence shows Plaintiff instigating the altercation by throwing two, unprovoked, closed-fist punches to Officer Shoults's head and then actively resisting when officers attempted to restrain him. The officers took Plaintiff to the ground, using physical force against him to gain his compliance. According to undisputed evidence, Plaintiff only complied with these efforts after Officer Coleman sprayed him with pepper gel. In all, it took the officers approximately three minutes to subdue Plaintiff, and there is no evidence to suggest that officers *continued* to use physical force against Plaintiff after he ceased resisting. Both the first and sixth *Kingsley* factors weigh in Defendants' favor.

The second factor focuses on the extent of Plaintiff's injury. After the incident, Plaintiff was evaluated and cleared by medical professionals, and he does not present any evidence that he sustained injuries.[9] In his recently-filed Response to Defendants' summary judgment motion, Plaintiff appears to concede that Defendants "did not leave any marks." *See* ECF 36 at 3. Thus, this factor, too, weighs in Defendants' favor.

The third factor asks whether the officers made any efforts to temper or limit the force they used. Despite the somewhat chaotic scene that unfolded, Defendants contend that they "used the least amount of force necessary," and they note that "[o]fficers at the scene did not use a taser on Plaintiff to gain compliance despite the fact that a taser could have been used." ECF 33 at 9. That

_____

[9] The Court acknowledges that Plaintiff's Fifth Amended Complaint contains the following quotation, purportedly from December 18, 2021: "I was injured on my left side of the body and face, I never got medical attention for it." ECF 18 at 4. Plaintiff provides no context for this statement. Moreover, as an unsworn allegation, it does not qualify as competent evidence to controvert Defendants' material facts.

Defendants limited the force to that exerted by their own bodies and ultimately to pepper gel suggests some degree of tempering. This factor weighs slightly in favor of Defendants.

With respect to the fourth and fifth factors—the severity of the security problem and the threat reasonably perceived by the officers—there is little question that Plaintiff's physical attack on Officer Shoults and his active resistance when officers attempted to restrain him presented a significant security threat for detention officers. The situation was compounded by a separate but simultaneous physical confrontation taking place in close proximity involving a different inmate. *See* ECF 32, Ex. O. As officers struggled to regain order in the pod in the face of two separate altercations, they reasonably perceived a serious security threat, which they were able to manage in relatively short order through application of physical force, pepper gel, and handcuffs. In light of these circumstances, the fourth and fifth factors strongly favor Defendants.

For his part, Plaintiff argues that his constitutional rights were violated because Defendants "choked him, punched him[, and] pepper sprayed him." ECF 36 at 2–3. But critically, not every use of force in the context of pretrial detention constitutes "excessive force" in violation of the Fourteenth Amendment. Moreover, the video evidence contradicts Plaintiff's unsworn assertion that he was "choked." *See* ECF 32, Ex. O. While the officers unquestionably applied physical force to take Plaintiff to the ground and to gain his compliance, including striking him in the side, that use of force was short-lived and reasonable under the circumstances.

Having considered the undisputed material facts and having reviewed the video evidence, the Court has little difficulty concluding that no reasonable factfinder could determine that the detention officers' use of force against Plaintiff was objectively unreasonable and therefore constitutionally excessive. Indeed, each and every *Kingsley* factor favors Defendants, and the evidence leads to one permissible conclusion: that, under the totality of the circumstances,

Defendants acted in an objectively reasonable manner to quickly restore order in the face of a serious and chaotic security situation. Under the first prong of the qualified immunity analysis, Plaintiff has failed to demonstrate that any Defendant violated his constitutional rights during the December 15, 2021 incident. Plaintiff has similarly failed to make an adequate showing under the second prong of the qualified immunity analysis. That is, he has not pointed to any case law to suggest that the use of physical force and pepper gel—employed by detention officers against a detainee who instigated a physical altercation by punching an officer in the face and actively resisted attempts to restrain him—violates that detainee's Fourteenth Amendment rights. Plaintiff having failed to meet his burden as to either prong, Defendants are entitled to qualified immunity with respect to his excessive force claim. The Court therefore recommends dismissal with prejudice of that claim.

## V.      CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that:

1.   To the extent Plaintiff seeks to amend his complaint for a seventh time [ECF 36], leave to amend should be **DENIED** as futile; and

2.   Defendants' Motion for Summary Judgment and Memorandum in Support [ECF 33] be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE